**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| THE CINCINNATI LIFE INSURANCE COMPANY, | ) | |
| | ) | |
|     Plaintiff-Stakeholder, | ) | |
| | ) | Case No.: 1:16-cv-1003 |
| v. | ) | |
| | ) | |
| Jewell Maul, Russell Maul, H.M., a minor, | ) | |
| C.M., a minor, and Betsy Hutchison, as Executor of | ) | |
| The Estate of Andrew B. Maul, deceased, | ) | |
| | ) | |
|     Defendant-Claimants. | ) | |

**THE CINCINNATI LIFE INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1(D), Defendant Cincinnati Life Insurance Company ("Cincinnati Life") moves for summary judgment in its favor and against the Defendants.  In support of its motion, Cincinnati states:

## I.     INTRODUCTION

Andrew Maul purchased two life insurance policies from Cincinnati Life Insurance Company as follows:

- Policy No. 6293071L for $250,000.00 (the "$250,000 Policy")

- Policy No. U2699679 for $69,383.00 (the "69,383 Policy")

When the policies were purchased, Andrew Maul and Jewell Maul were married. Both Policies named Jewell Maul as the primary beneficiary and named Russell Maul as the contingent beneficiary. Russell Maul was Andrew Maul's father. During the marriage of Andrew Maul and Jewell Maul, they had two daughters. Both daughters are minor children. Andrew Maul and Jewell Maul divorced on February 19, 2015.  As part of the divorce, they entered into a Marital Settlement Agreement. In the Marital Settlement Agreement, they agreed that Andrew Maul

1

would maintain a life insurance policy in the amount of $250,000.00. Andrew Maul agreed to "designate Jewell as a beneficiary of the foregoing insurance, not individually, but solely as custodian of the children . . .." However, Andrew Maul did not send documentation to Cincinnati Life changing the beneficiary designation in the $250,000 Policy or the $69,383 Policy.

Andrew Maul died on September 11, 2015. His death is being investigated as a homicide. Robert Gill, Jewell Maul's father, has been arrested and charged with Andrew Maul's murder. His case No. is 2015CF145 and includes 3 charges of Murder/intent to Kill/Injure, 1 charge of attempted Murder/Other Forcible Felony, and 2 charges of Residential Arson. Jewell Maul is under investigation with respect to Andrew Maul's murder.

A probate estate has been opened with respect to Andrew Maul. In that proceeding a request has been filed to name Russell Maul as the fiduciary of Andrew Maul and Jewell Maul's minor children.

In a planning conference held between parties on June 9th and 13th, 2016, counsel for Russell Maul indicated that he would object to the $250,000 Policy proceeds being distributed to Jewell Maul.

Cincinnati Life has no interest in the Policy proceeds.

In light of the foregoing facts, Cincinnati Life has a real and reasonable fear of multiple claims and double liability. Based on that real and reasonable fear, Cincinnati Life is entitled to summary judgment.

## II.     STATEMENT OF UNDISPUTED FACTS

### A.     Undisputed Facts Giving Rise To the Cause Of Action

1.      The life insurance policies involved in this case are Policy No. 6293071L with a death benefit of $250,000.00 (the "$250,000 Policy") and Policy No. U2699679 with a death

benefit of $69,383.00 (the "69,383 Policy").  *See* Declaration of Ann S. Binzer, p. 1, ¶ 3, attached as Exhibit 1.

2.　　Andrew Maul and Jewell Maul were husband and wife.  *See* Defendant Claimant Jewell Maul's Response to Plaintiff-Stakeholder's First Set of Requests for Admission of Facts ("Cincinnati Life Requests to Admit"), p. 2, Resp. No. 6, attached as Exhibit 2; H.M. and C.M.'s Response to the Cincinnati Life Requests to Admit, p. 2, Resp. No. 6, attached as Exhibit 3; Russell Maul and Betsy Hutchison's Response to the Cincinnati Life Insurance Company's Requests to Admit, p. 2, Resp. No. 6, attached as Exhibit 4.

3.　　During the marriage of Andrew Maul, and Jewell Maul, they had two daughters, H.M. and C.M.  Exhibit 2, p. 2, Resp. No. 7; Exhibit 3, p. 2, Resp. No. 7; Exhibit 4, p. 2, Resp. No. 7.

4.　　While he was married to Jewell Maul, Andrew Maul purchased the $250,000 Policy and the $69,383 Policy from Cincinnati Life.  Exhibit 2, p. 1, Resp. No. 1; Exhibit 4, p. 1, Resp. No. 1; s*ee also*, Jewell Maul's Answer to Interpleader Complaint Dkt. 15, pp. 2-3, ¶¶ 6-7[1] ("Jewell Maul's Answer"); Russell Maul and Betsy Hutchison's Answer to Interpleader Complaint Dkt. 18, p. 2, ¶¶ 6-7 ("Russell Maul and Betsy Hutchison's Answer").

5.　　Jewell Maul is listed as the primary beneficiary on the $250,000 Policy.  Exhibit 2, p. 1, Resp. No. 2; Exhibit 3, p. 1, Resp. No. 2; Exhibit 4, p. 1, Resp. No. 2; Jewell Maul's Answer, Dkt. 15, pp. 2-3, ¶¶ 6-7; Russell Maul and Betsy Hutchison's Answer, Dkt. 18, p. 2, ¶¶ 6-7.

6.　　Russell Maul is listed as the contingent beneficiary on the $250,000 Policy. Exhibit 2, p. 1, Resp. No. 3; Exhibit 3, p. 1, Resp. No. 3; Exhibit 4, pp. 1-2, Resp. No. 3; Jewell

---

[1] References to "Dkt" are to this case, no. 1:16-cv-01003-JBM-JEH and the Court's docket number.

Maul's Answer, Dkt. 15, pp. 2-3, ¶¶ 6-7; Russell Maul and Betsy Hutchison's Answer, Dkt. 18, p. 2, ¶¶ 6-7.

7.     Jewell Maul is listed as the primary beneficiary on the $69,383 Policy. Exhibit 2, p. 2, Resp. No. 4; Exhibit 3, p. 1, Resp. No. 4; Exhibit 4, p. 2, Resp. No. 4; Jewell Maul's Answer, Dkt. 15, pp. 2-3, ¶¶ 6-7; Russell Maul and Betsy Hutchison's Answer, Dkt. 18, p. 2, ¶¶ 6-7.

8.     Russell Maul is listed as the contingent beneficiary on the $69,383 Policy. Exhibit 2, p. 2, Resp. No. 5; Exhibit 3, p. 2, Resp. No. 5; Exhibit 4, p. 2, Resp. No. 5; Jewell Maul's Answer, Dkt. 15, pp. 2-3, ¶¶ 6-7; Russell Maul and Betsy Hutchison's Answer, Dkt. 18, p. 2, ¶¶ 6-7.

9.     On February 19, 2015, Andrew Maul and Jewell Maul were divorced. Exhibit 2, p. 2, Resp. No. 9; Exhibit 3, p. 2, Resp. No. 9; Exhibit 4, p. 2, Resp. No. 9; Jewell Maul's Answer, Dkt. 15, p. 3, ¶ 8; Russell Maul and Betsy Hutchison's Answer, Dkt. 18, p. 2, ¶ 8; *see also*, H.M. and C.M.'s Answer to Interpleader Complaint Dkt. 14, p. 2, ¶ 8 ("H.M. and C.M.'s Answer.

10.     As part of the divorce, Andrew Maul and Jewell Maul entered into a Marital Settlement Agreement. Exhibit 2, p. 2, Resp. No. 10; Exhibit 3, p. 2, Resp. No. 10; Exhibit 4, p. 2, Resp. No. 10.

11.     The Marital settlement agreement required that Andrew Maul maintain the $250,000 Policy and "designate Jewell [Maul] as a beneficiary of the foregoing insurance, not individually, but solely as custodian of the children [H.M.] and [C.M.]." *See* Exhibit 2, pp. 2-3, Resp. Nos. 13, 14; Exhibit 3, p. 2, Resp. No. 14; Exhibit 4, p. 3, Resp. Nos. 13, 14; H.M. and

C.M.'s Answer, Dkt. 14, p. 2, ¶ 9; Jewell Maul's Answer, Dkt. 15, p. 3, ¶ 9; Russell Maul and Betsy Hutchison's Answer, Dkt. 18, p. 2, ¶ 9.

12.     Cincinnati Life never received documentation changing the beneficiary designation in the $250,000 Policy.  Exhibit 1, p. 2, ¶ 8.

13.     Andrew Maul obtained an order of protection against Jewell Maul.  Exhibit 2, p. 3, Resp. No. 17; Exhibit 4, pp. 3-4, Resp. No. 17.

14.     On or about September 11, 2015, Andrew Maul died as a result of multiple gunshots to the head.  *See* Death Certificate of Andrew Maul, attached as Exhibit 5; *see also*, Declaration of Special Prosecutor Edwin Parkinson, ¶ 1, attached as Exhibit 6.

15.     Andrew Maul's death has been ruled a homicide and there is an ongoing investigation to identify the responsible parties. Exhibit 6, ¶¶ 1, 5.

16.     Jewell Maul's father, Robert Gill, has been arrested for and charged with First Degree Murder by shooting Andrew Maul multiple times.  His criminal case no is 2015-CF-145.  Exhibit 2, pp. 3-4, Resp. Nos. 21, 22, 24; Exhibit 3, p. 3, Resp. No. 21, 22, 24; Exhibit 4, pp. 4, Resp. Nos. 21, 22; Exhibit 6, ¶ 1.

17.     Jewell Maul is currently under investigation by a Special Prosecutor to determine her complicity in the murder of Andrew Maul.  Exhibit 6, ¶ 5.

18.     The investigation of Jewell Maul is ongoing and there is no deadline by which the investigation of Jewell Maul is set to conclude.  *See* Exhibit 6, ¶ 5.

**B.     Competing Claims and Potential for Multiple Liability**

19.     Shortly after Andrew Maul's death, Cincinnati Life received a claim, submitted by Jewell Maul, for proceeds from the $250,000 Policy and the $69,383 Policy.  Exhibit 1, p. 2, ¶ 9; Exhibit 2, pp. 4, Resp. Nos. 28-29.

20. Russell Maul claims an interest in the $250,000 Policy and the $69,383 Policy. Exhibit 4, p. 6, Resp. Nos. 33, 34.

21. Further, H.M. and C.M. may have a claim for the proceeds from the $250,000 Policy. Exhibit 2, p. 5, Resp. No. 32; Exhibit 3, p. 5, Resp. No. 32; Exhibit 4, p. 6, Resp. No. 32.

22. A probate estate has been opened with respect to Andrew Maul. In that proceeding, a request has been filed to name Russell Maul the personal fiduciary of H.M. and C.M. *See* H.M. and C.M.'s Answer, Dkt. 14, p. 4, ¶20; Jewell Maul's Answer, Dkt. 15, p. 5, ¶ 20; Russell Maul and Betsy Hutchison's Answer, Dkt. 18, p. 3, ¶ 20; Exhibit 1, ¶ 14; *see also*, Docket History Printout from Morgan County, Illinois Case No. 2015 P 96, attached as Exhibit 7.

23. Cincinnati Life has a real and reasonable fear of double liability and conflicting claims for the proceeds of the policies. Exhibit 1, page 3, ¶ 15.

### III.   <u>ARGUMENT</u>

#### A.   **Legal Standard for Summary Judgment**

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

#### B.   **Cincinnati Life Is Entitled to Interplead Under Federal Rule of Civil Procedure 22**

Interpleader under Rule 22, F.R.C.P. is an equitable procedure used when the stakeholder is in danger of exposure to double liability or the vexation of litigating conflicting claims. *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008); *Indianapolis Colts v. Mayor and City Council of*

*Baltimore,* 741 F.2d 954, 957 (7th Cir.1984); *Union Cent. Life Ins. Co. v. Hamilton Steel Prods., Inc.,* 448 F.2d 501, 504 (7th Cir.1971). A "real and reasonable fear" does not require the party requesting interpleader to show that any of the claimants might eventually prevail. After a court has determined that interpleader is warranted, the claimants proceed to a second stage in which the merits of their claims are resolved. *United States v. High Tech. Prods., Inc.,* 497 F.3d 637, 641 (6th Cir.2007).

Moreover, a stakeholder may file an interpleader action to protect itself against "potential, as well as actual, claims." *Minn. Mut. Life Ins. Co. v. Ensley,* 174 F.3d 977, 980 (9th Cir.1999); *see also, Corrigan Dispatch Co. v. Casa Guzman, S.A.,* 696 F.2d 359, 364 (5th Cir.1983) ("At this initial stage, the merits of these potential claims are irrelevant; the threat of multiple vexation by future litigation provides sufficient basis for interpleader under F.R.C.P. 22."). "The purpose of federal interpleader is to protect the stakeholder against the possibility of multiple liability on the same debt, even where only one claim is pending." *Americo Fin. Life & Annuity Ins. Co. v. Kelly,* No. CV–F–04–5997 LJO, 2005 WL 2604196, at *4 (E.D.Cal. Oct.13, 2005).

Cincinnati Life establishes below that it faces the possibility of multiple liability. This potential risk is three fold. First, the face of the 250,000 Policy states that the policy proceeds should be paid to Jewell Maul.[2] Stmts. 10,12. However, because of the marital agreement, the $250,000 might be payable to the Maul children. Stmt. 16. Second, Illinois' Slayer Statute forbids payment to anybody who cause the death of the person whose life was insured. 755 ILCS

---

[2] All citations are to Cincinnati Life's Local Rule statement of facts not in dispute included above. Many facts are established by the admissions of one or more defendants to particular allegations in the complaint. *Help At Home Inc. v. Med. Capital, L.L.C.,* 260 F.3d 748, 753 (7th Cir. 2001) ("Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them"). Additional uncontroverted facts are established by responses to Requests to Admit promulgated by Cincinnati Life pursuant to Rule 36, F.R.C.P. Last, Cincinnati Life presents certain incontrovertible evidence by affidavit.

5/2–6. Jewell Maul is being investigated for complicity in Andrew Maul's death. Stmt. 23. Third, Russell Maul is the contingent beneficiary on both policies. Stmt. 11, 13. There is potential that he could take under one or both of the policies.

## C.  The Marital Agreement and the $250,000 Policy

Jewell Maul has demanded that she receive payment of the $250,000 Policy's proceeds. Stmt. 26. Andrew and Jewell Maul divorced on February 19, 2015. Stmt. 14. Pursuant to the Marital Settlement Agreement, Andrew Maul was required to maintain a $250,000.00 life insurance policy and execute the necessary documents to designate Jewell Maul as beneficiary, but *solely* as custodian of the funds for the children. Stmt. 16. The policies contain a "Change of Beneficiary" clause that states: "The owner may change the beneficiary by notifying us in writing while you are alive. When we receive written notice, the change will be effective on the date the notice was signed…" Stmt. 16. No such documentation was supplied to Cincinnati Life. Stmt. 17.

Because of the marital agreement, there is an issue whether Jewell Maul waived her interest in the $250,000.00 Policy. A divorce does not necessarily defeat a spouses' legal interest in a life insurance policy's death benefits. The general rule in Illinois is that contractual rights created independently of marriage survive divorce and are not automatically revoked. *Seuss v. Schukat*, 358 Ill. 27, 35-36, 192 N.E. 668 (1934). However, parties can waive those rights in a divorce decree so long as the waiver is specific as to the right. *Robson v. Electical Contractors* Assn, 312 Ill.App.3d 384, 382, 727 N.E.2d 692, 698 (1st Dist. 2000); *In re Marriage of Velasquez*, 295 Ill.App.3d 350, 354, 692 N.E.2d 841, 845 (3d Dist. 1998); *In re Marriage of Myers*, 257 Ill.App.3d 560, 564, 628 N.E.2d 1088, 1090 (1st Dist. 1993). The waiver must include a clear expression of a spouses' surrender of beneficial interests. *Myers*, 257 Ill.App.3d

at 564. Broadly worded statements are not sufficient to defeat a designated beneficiary's interest. *Williams v. Gatling*, 186 Ill.App.3d 21, 23, 542 N.E.2d 121, 123-124 (1st Dist. 1989).

Despite the marital settlement agreement, Jewell Maul remains the primary beneficiary on the policies. A court could, however, find that the language in the Marital Settlement Agreement constitutes a knowing waiver by Jewell Maul of her individual legal interest in the $250,000 Policy's proceeds. In that event, Jewell Maul is the beneficiary of the $250,000.00 policy solely as custodian of decedent's two minor daughters. This, in turn, would implicate the petition by Russell Maul to become a fiduciary for the girls, further complicating the issue of who should take under the $250,000 Policy and how payment should be made. A Court should determine these matters

**D.     The Slayer Statute and Both Policies**

Illinois' Slayer Statute forbids "person[s] causing death…intentionally and unjustifiably" from "receiv[ing] any property, benefit or other interest by reason of the death [of the victim], whether as heir, legatee, beneficiary ... or in any other capacity." If the implicated beneficiary is disqualified, the property shall "pass as if the person causing the death died before the decedent." 755 ILCS 5/2–6. Courts have applied the statute to life insurance. *Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 478 (7th Cir. 1999) *citing State Farm Life Ins. Co. v. Davidson*, 144 Ill.App.3d 1049, 495 N.E.2d 520 (Ill.App.1986); *Eskridge v. Farmers New World Life Ins. Co.*, 250 Ill.App.3d 603, 621 N.E.2d 164, 169 (Ill.App.1993). A person convicted of first or second degree murder of the decedent is conclusively presumed to have caused the death intentionally and unjustifiably for purposes of the statute. 755 ILCS 5/2-6. A conviction is not essential to preventing a person from receiving life insurance benefits. *State Farm Life Insurance Co. v. Smith*, 66 Ill.2d 591, 595, 363 N.E.2d 785, 586 (1977). Thus, the issue may be litigated civilly.

Moreover, the existence of an investigation into a beneficiary's possible complicity in the death creates a basis for interpleader. *See Met. Life Ins. Co. v. White,* 972 F.2d 122, 124 (5th Cir.1992); *Metro. Life Ins. Co. v. Johnson*, No. 11 C 8210, 2012 WL 2192283, at *2–3 (N.D. Ill. June 13, 2012). For example, in *Johnson*, Johnson was a suspect in the decedent's death. This created "a disputed issue as to whom the [p]olicy's benefits should be paid." *Johnson*, 2012 WL 2192283, at *2-3. There were others in the mix in the case and they had not yet filed claims for the insurance benefits. Nevertheless, Johnson could not recover the policy's benefits if the court held that his implication in Decedent's homicide was preclusive. Accordingly, because MetLife had a "real and reasonable fear of double liability or conflicting claims," its interpleader action was proper." *Johnson*, 2012 WL 2192283, at *2-3. *See also, Mahl,* 550 F.3d at 663.

There is a possibility that Jewell Maul may be implicated as having caused the death here. Authorities continue to investigate whether Jewell Maul is complicit in Andrew Maul's death. Stmt. 23. This is established by the affidavit of the prosecutor in the case. Of course, it is unknown whether Jewell Maul will ultimately be implicated in a crime. However, that is not the standard for interpleader. Rather, the potential for her implication alone justifies the use of the interpleader procedure.

**E.     Russell Maul's Contingent Beneficiary Status Under Both Policies**

Russell Maul is the contingent beneficiary under both policies. Stmt. 11, 13. This means that if Jewell Maul, the primary beneficiary, does not take he does. For example, should Jewell Maul not be permitted to take under the policies because of the Slayer Statute, Russell Maul will do so. Moreover, Russell Maul has petitioned the probate court for permission to act as fiduciary for the two Maul daughters. Stmt. 29. Thus, should the girls become beneficiaries of the $250,000 Policy, it is possible that the funds should be disbursed to Russell Maul, for their

benefit. This possibility exists irrespective of whether Jewell Maul's rights are implicated by the Slayer Statute.

<h2 align="center">IV. <u>CONCLUSION</u></h2>

Based on the facts and law, as stated above, Cincinnati Life asks this to Court grant its motion for summary judgment and enter the proposed order attached as Exhibit 8.

Respectfully submitted,

By:   <u>s/Daniel G. Litchfield</u>

Daniel G. Litchfield (ARDC No. 06185695)
Litchfield Cavo LLP
303 West Madison Street
Suite 300
Chicago, Illinois 60606
(312) 781-6669
(312) 781-6630 Facsimile
litchfield@litchfieldcavo.com
Attorneys for Defendant
Cincinnati Life Insurance Company